UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,                   :
                                            :
        v.                                  :          **MEMORANDUM & ORDER**
                                            :          20-CR-293 (WFK)
DERYCK THOMPSON,                            :
                                            :
                        Defendant.          :
------------------------------------------------------------X

On September 22, 2022, Defendant Deryck Thompson ("Defendant"), pled guilty to Count 14 of a 20-count Superseding Indictment, charging Defendant with assault in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(3). Pursuant to his plea agreement, Defendant also stipulated and admitted to the offenses contained in Counts 11, 16, and 18 of the Superseding Indictment, all of which charge him with attempted murder in-aid-of racketeering, in violation of 18 U.S.C. § 1959(a)(5). The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to 210 months of imprisonment, to be followed by three years of supervised release with special conditions. Defendant is required to pay a mandatory special assessment of $100.00. Finally, forfeiture is required in accordance with the terms set forth in the Order of Forfeiture.

## I. Background

The Federal Bureau of Investigation ("FBI") and the New York City Police Department ("NYPD") led the investigation into Defendant and other gang members for the instant offense. Presentence Investigation Report ("PSR") ¶ 8, ECF No. 576. Defendant is a member of the No Love City ("NLC") set, or neighborhood-based subgroup, of Folk Nation Gangster Disciples ("GD"), a violent street gang operating out of Brooklyn, New York. PSR ¶ 8. Central to GD's tenets is the use of violence to retaliate against perceived slights to the gang or to enhance the status of members within the gang. *Id.*

In November of 2020, Defendant, along with others, participated in four shootings targeting rival gang members. PSR ¶ 10. The first two shootings, both of which were carefully orchestrated drive by shootings, took place in Canarsie, Brooklyn on November 7, 2020. *Id.* ¶

1

18. GD arranged to have three cars participate in the shooting: one to carry the shooters, and two to act as decoys. *Id.* ¶ 18. Decoys were employed to slow down the police or draw their attention away from the shooters in the event police interfered. *Id.* ¶ 19. The cars drove from Flatbush, Brooklyn, which is NLC territory, to Canarsie, Brooklyn, which is rival gang territory. *Id.* Upon arrival in Canarsie, the convoy drove past a crowd of people and the occupants of the shooter car opened fire. *Id.* No one was injured in this shooting. *Id.* Later that same day, the convoy returned to Canarsie and again opened fire into a crowd of people, non-fatally wounding two of those people. *Id.* ¶ 20. For both shootings, Defendant was in the car with the shooters. *Id.* ¶¶ 20-21.

The second two shootings took place on November 9, 2020. *Id.* ¶¶ 23, 25-26. That day, Defendant and others set out in another three-car convoy comprised of a shooter car and two decoys. *Id.* ¶ 23. The convoy drove to rival gang territory in Prospect Park South, Brooklyn, and circled a group of men twice before stopping. *Id.* ¶ 25. Defendant and one other GD member exited the car and opened fire at the group. *Id.* No one was injured in this shooting. *Id.* Later that day, in a two-car convoy, Thompson and other members of GD drove to Brownsville, Brooklyn, and shot into a crowd of people, striking one woman. *Id.* ¶ 26. Again, Defendant was an occupant of the shooter car. *Id.* ¶ 26.

On August 10, 2021, Defendant was arrested in his home by FBI agents, where a search uncovered a firearm, marijuana, and $1,590 in cash, among other things. *Id.* ¶ 41.

On August 4, 2021, a grand jury returned a twenty-count Superseding Indictment, which alleges Defendant, along with ten co-defendants, was a member of the Folk Nation Gangster Disciples, also known as "GD," a gang operating throughout Brooklyn, New York. ECF No. 51. ¶¶ 1, 8. According to the Superseding Indictment, GD is an "enterprise" as defined by 18 U.S.C.

2

§ 1959(b)(2) that engaged in racketeering activity as defined in 18 U.S.C. §§ 1959(b)(l) and 1961(1). *Id.* ¶¶ 4-5.

Defendant was charged with eleven counts in the Superseding Indictment: Count 10 charges Defendant with conspiracy to murder rival gang members, in violation of 18 U.S.C. § 1959(a)(5); Counts 11, 13, 16, and 18 charge Defendant with attempted murder in-aid-of racketeering, in violation of New York Penal Law §§ 125.25(1), 110.00 and 20.00, in violation of 18 U.S.C. § 1959(a)(5); Counts 12 and 17 charge Defendant with attempted assault in-aid-of racketeering, in violation of New York Penal Law §§ 120.05(2), 110.00 and 20.00, in violation of 18, U.S.C. § 1959(a)(6); Counts 15 and 20 charge Defendant with possessing, brandishing and discharging a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(l)(A)(i), 924(c)(l)(A)(ii), 924(c)(1)(A)(iii); and Counts 14 and 19 charge Defendant with assault in-aid-of racketeering, in violation of New York Penal Law §§ 120.05(2) and 20.00, in violation of 18 U.S.C. § 1959(a)(3); the Superseding Indictment also contains a criminal forfeiture allegation as to all counts. *Id.* ¶¶ 44-45.

On September 22, 2022, Defendant entered a plea of guilty as to Count 14, charging him with assault in-aid-of racketeering. ECF No. 362. Pursuant to that plea agreement, Defendant also stipulated and admitted to the offenses contained in Counts 11, 16, and 18 of the Superseding Indictment, all of which charge him with attempted murder in-aid-of racketeering. *Id.* ¶ 2. The parties agreed that, for sentencing purposes, this conduct would be considered pursuant to United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") § 1B1.2(c) as if the defendant has been convicted of those counts. *Id.*; *see also* PSR ¶ 3. As part of his plea agreement, Defendant agreed not to file an appeal or otherwise challenge his sentence if the Court imposes a term of imprisonment of 240 months or below. ECF No. 362 ¶ 5.

## II. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## III. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

1. Family and Personal Background

Defendant was born on February 24, 1999, in Brooklyn, New York, to the marital union of Deryck Thompson and Irene Worrell. PSR ¶ 94. Defendant reported that he and his siblings were raised by his parents in a low-income neighborhood in Brooklyn. *Id.* ¶ 98. While Defendant reported that his parents were strict disciplinarians, he stated that he was raised in a loving and caring home. *Id.* Defendant's father works as a care team advisor at a physician's office and Defendant's mother works as a salesperson. *Id.* Both parents are aware of Defendant's prosecution and remain supportive. *Id.* Defendant has one full sibling and two maternal half-siblings, all of whom are aware of the instant prosecution and remain supportive. *Id.* ¶¶ 96-97. Defendant has never been married and has no children. *Id.* ¶ 99.

2. Educational and Employment History

Defendant attended various high schools in Brooklyn, New York, but ultimately left school in 2019 without receiving a diploma. *Id.* ¶ 107-09. Defendant reported that he was previously enrolled in a GED course but stopped when classes ended in February 2020 due to the Covid-19 pandemic. *Id.* ¶ 107. According to defense counsel, Defendant is still working towards his GED. Defense Sentencing Memorandum ("Def. Mem.") at 5, ECF No. 678. Defendant also reported that, prior to his arrest for the instant offense, he was attending a program at Coop Tech in Manhattan, New York, to become a certified nursing assistant. PSR ¶ 105. However, he was unable to complete the program as a result of his arrest. *Id.*

Defendant was unemployed between 2019 and 2021. *Id.* ¶ 110-11. At different times throughout 2018 and 2019, Defendant reported holding positions as a stock clerk at Walgreens in Brooklyn, as a part-time after-school counselor at Remsen Elementary School, as a salesperson at a Modell's department store in Brooklyn, and as a counselor at the New York City Summer Youth program. *Id.* ¶¶ 112-15.

        3.      Prior Convictions

Defendant has one prior conviction for disorderly conduct. *Id.* ¶ 88. On May 26, 2019, Defendant attempted to purchase various items with a fake credit card at a Century 21 retail store in Manhattan, New York. *Id.*

        4.      Physical and Mental Health

Defendant reported that he suffers from asthma, but otherwise reported no physical health issues. *Id.* ¶ 101. As for mental health, defense counsel explains that Defendant struggled with addiction and suicidal thoughts prior to his arrest and was going through a nervous breakdown at the time of the instant offenses. Def. Mem. at 4. Defense counsel further claims that, as a result of the COVID-19 pandemic, Defendant fell into a deep depression and used drugs and alcohol as a coping mechanism. *Id.*

Defendant reported suffering from anxiety while at Hudson County Correctional Facility but noted that he has been meeting with a therapist monthly to address this. PSR ¶ 102. Defendant informed Probation that his mental state has improved. *Id.* According to defense counsel, Defendant "specifically asks for more mental health and drug and alcohol counseling." Def. Mem. at 7.

        5.      Substance Abuse

6

Probation reports that Defendant used marijuana daily and drank alcohol on social occasions. PSR ¶ 103. However, defense counsel provides a more extensive reporting of Defendant's substance abuse history, detailing his addiction to numerous substances, including codeine, marijuana, and liquor at the time of his involvement in the instant offenses. Def. Mem. at 4. Defense counsel further explains that Defendant used to mix these three substances "because they helped him not feel the suicidality and depression he suffered each day." *Id.* at 6. According to defense counsel, Defendant is now sober and has requested further drug and alcohol counseling. *Id.* at 4, 6, 7.

### 6. Nature and Circumstances of the Offense

The Court's previous statements make clear the nature and circumstances surrounding the instant offense. *See supra* Part I.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense, which involved participation in four different shootings. *See supra* Part I. While Defendant and other members of GD were purportedly targeting rival gang members, they opened fire into crowds of people, shooting indiscriminately. *Id.* In each drive-by shooting, Defendant was an occupant of the car carrying the shooters. PSR ¶¶ 20-21, 23, 26. In addition, as part of the first shooting on

November 9, 2020, Defendant was one of two GD members to exit the vehicle and open fire at a group of men. *Id.* ¶ 25. The Court's sentence will deter others from engaging in similar acts and justly punishes Defendant for his crimes.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to Count 14 of the Superseding Indictment, charging him with assault in-aid-of racketeering, in violation of New York Penal Law §§ 120.05(2) and 20.00, in violation of Title 18, U.S.C. § 1959(a)(3). ECF No. 362. Pursuant to his plea agreement, Defendant also stipulated and admitted to the offenses contained in Counts 11, 16, and 18 of the Superseding Indictment, all of which charge him with attempted murder in-aid-of racketeering, in violation of New York Penal Law §§ 125.25(1), 110.00, and 20.00, in violation of 18 U.S.C. § 1959(a)(5). *Id.* ¶ 2. The parties agreed that, for sentencing purposes, this conduct would be considered pursuant to U.S.S.G. §1B1.2(c) as if Defendant has been convicted of those counts. *Id.*; *see also* PSR ¶ 3.

Defendant faces a statutory maximum term of imprisonment of 20 years, which is to say 240 months, pursuant to 18 U.S.C. § 1959(a)(3). Defendant also faces a term of supervised release of not more than three years. 18 U.S.C. § 3583(b)(2). Pursuant to 18 U.S.C. § 3561(c)(1), Defendant is eligible for a term of probation of not less than one nor more than five years because this is a Class C Felony. If a term of probation is imposed, a fine, restitution, or community service must be imposed, unless extraordinary circumstances exist. 18 U.S.C. § 3563(a)(2).

In addition to facing terms of imprisonment, probation, and supervised release, Defendant faces numerous other penalties. Defendant faces a maximum fine of $250,000.00 pursuant to 18

U.S.C. § 3571(b). However, Defendant's financial profile indicates he is unable to pay a fine. PSR ¶ 119. Defendant also faces forfeiture of two semi-automatic pistols, pursuant to 18 U.S.C. § 924(d)(1), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), as outlined in the Preliminary Order of Forfeiture. Preliminary Order of Forfeiture, ECF No. 515.

Restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A. However, the amount of restitution is not determinable yet as the Court is still awaiting responses from Defendant's victims and his victims' families. PSR ¶ 130. Per guidance from *United States v. Catoggio*, 326 F.3d 323 (2d Cir. 2003), restitution should not be ordered when losses incurred by the victim are not identified. The Court reserves its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within 90 days after this sentencing to determine the specific amounts owed to Defendant's victims.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." *Id.* § 3553(a)(4)(A).

The applicable guideline for 18 U.S.C. § 1959(a)(3), as outlined in Count 14 of the Superseding Indictment, is U.S.S.G. §2E1.3(a)(2), which directs that the base offense level is the offense level applicable to the underlying crime or racketeering activity, since it is greater than level 12. PSR ¶ 43. The underlying crime in the instant case is attempted murder, so the applicable guideline is U.S.S.G. §2A2.1(a)(1), which provides for a base offense level of 33. *Id.* All parties agree that the base level for the offense is 33. *Id.*; Def. Mem. at 3; Government Memorandum ("Gov't Mem.") at 4-5, ECF No. 682. Probation and the Government assert that a 3-level enhancement per U.S.S.G. §3B.1(b) is warranted because Defendant was a manager or

9

supervisor within NLC, bringing the adjusted offense level to 36. PSR ¶ 43; Gov't Mem. at 3-6. The Government asserts that it was proven at trial that Defendant was a leader "with specific responsibility for 'security' which gave him authority over other gang members and included responsibility 'to make sure nobody disrespects the gang.'" Gov't Mem. at 3 (quoting Trial Tr. 313, 335). The Government further notes that the plea agreement specifically provides for the 3-level enhancement. *Id.* at 5 n.4; *see also* ECF No. 362 ¶ 3. Probation submitted an addendum to the PSR in which it reaffirmed the applicability of the enhancement. Addendum to the PSR at 1-2, ECF No. 687. While defense counsel originally objected to the enhancement in its papers, Def. Mem. at 3-4, that objection was withdraw at the sentencing hearing.

In addition to Count 14, Defendant's guilty plea included stipulating to additional criminal conduct, as outlined in Counts 11, 16, and 18 of the Superseding Indictment. ECF No. 362 ¶ 2. The Sentencing Guidelines direct that "a plea agreement containing a stipulation that specifically establishes the commission of additional offense(s) shall be treated as if the defendant had been convicted of additional counts charging those offenses." U.S.S.G. §1B1.2(c). The additional offenses require a multi-count analysis set forth in Chapter Three, Part D of the Sentencing Guidelines.

The applicable guideline for 18 U.S.C. § 1959(a)(5), as contained in Counts 11, 16, and 18, is U.S.S.G. §2E1.3(a)(2), which directs that the base offense level is the offense level applicable to the underlying crime or racketeering activity, since it is greater than level 12. PSR ¶¶ 46-48. Because the underlying crime for these counts is also attempted murder, the applicable guideline for each is also U.S.S.G. §2A2.1(a)(1), which provides for a base offense level of 33. *Id.* Again, all parties agree that the base level for these offenses is 33. *Id.*; Def. Mem. at 3; Gov't Mem. at 4-5.

10

Probation and the Government again assert that a 3-level enhancement per U.S.S.G. §3B.1(b) is warranted for each of these offenses, bringing the total adjusted offense level to 36, because of Defendant's position as a manager or supervisor. PSR ¶¶ 46-48; Gov't Mem. at 3-6. While defense counsel originally also objected to this enhancement, Def. Mem. at 3, the objection was withdrawn at the sentencing hearing and defense counsel agreed that the enhancement was applicable.

Pursuant to the Multiple Count Analysis laid out in U.S.S.G. § 3D1.4, the combined offense level is determined by taking the highest offense level of the group and increasing that by how many "units" exist across counts. In this instance, because there is no grouping, *see* U.S.S.G. §3D1.2; PSR ¶ 53, and the offense level for each charge is the same, each count is one unit. U.S.S.G. § 3D1.4(a); *see also* PSR ¶ 79. Added together, these units result in a four-level increase to the total adjusted offense level. *Id.* ¶ 62.

Finally, all parties agree that Defendant's acceptance of responsibility results in a three-level reduction pursuant to U.S.S.G. §§ 3E1.1. PSR ¶¶ 84-85; Gov't Mem. at 5; Def. Mem. at 3-4. This brings the Government's, Probation's, and defense counsel's calculations—based on defense counsel's withdrawal of its objection to the three-level manager or supervisor enhancement at the sentencing hearing—total offense level calculation to 37. PSR ¶ 86; Gov't Mem. at 5; Def. Mem. at 4. The Court adopts this calculation.

All parties agree that Defendant has a criminal history category of I. PSR ¶ 89; Gov't Mem. at 6; Def. Mem. at 4.

Probation contends an upward departure may be warranted pursuant to Application Note 2 in the Commentary to U.S.S.G. §2A2.1 because Defendant's actions created a substantial risk of death or serious injury to more than one person. PSR ¶ 138.

11

For Probation and the Government, a total adjusted offense level of 37, combined with a criminal history category of I, results in an effective recommended Guidelines range of imprisonment of 210 to 240 months. PSR ¶ 121; Gov't Mem. at 5; *see also* U.S.S.G. §5G1.1(c)(1). While defense counsel originally argued that the three-level supervisory enhancement should not apply, bringing Defendant's total offense level to 34 and resulting in a guidelines range of 151 to 188 months, Def. Mem. at 4, defense counsel withdrew this argument at the sentencing hearing and agreed to the calculations laid out by Probation and the Government.

Probation recommends the Court impose a sentence of 210 months of imprisonment followed by three years of supervised release with special conditions. Probation Recommendation at 1, ECF No. 576-1. This is in addition to the mandatory $100.00 special assessment. *Id.* Finally, Probation recommends Defendant be excused from the mandatory drug testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d) because, according to Probation, Defendant poses a low risk of substance abuse. *Id.* Probation thinks this sentence, which falls at the bottom of the guidelines range, is warranted because it takes into consideration Defendant's young age and the fact that he has very little in the way of criminal history, but also accounts for the seriousness of the four shootings he participated in as well as his managerial role. *Id.* at 1-2. The Court adopts Probation's recommendation excusing Defendant from the mandatory drug testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d).

Defense counsel requests a downward departure or variance from the Guidelines sentencing range for Defendant. Def. Mem. at 7. Defense counsel specifically recommends a sentence of 120 months and probation, which it argues is sufficient given Defendant's lack of significant criminal history, his young age, and his acceptance of responsibility. *Id.* Defense

counsel emphasizes that Defendant "wholeheartedly regrets his actions, because he acted self-destructively, which enabled him to be externally destructive." *Id.* at 5. Defense counsel further notes that Defendant has "disavow[ed] involvement in gang activity" and "sees the 22-year-old arrested in August of 2021 as a drug-addicted, self-destructive child." *Id.*

Defense counsel asks the Court to consider Defendant's case "holistically with regard to all of the 18 USC 3553 factors, and to grant him a variance or downward departure based on (a) his lack of supervisory or managerial conduct, (b) his lack of any criminal history prior to these events, and (c) the sentencing factors taken together, which show his deep remorse, conscience, and feelings of guilt for his conduct, including his disavowal of gangs and associations with gangs." *Id.* at 6. Defense counsel emphasizes that Defendant "above all, wants to find better programs to improve himself as a human being while incarcerated and looks forward to continuing education and religious involvement." *Id.* at 7.

This Court has read and considered the letters written by Defendant's loved ones and family. Ex. A of Def. Mem. at 10-14, ECF No. 678. These letters describe Defendant as a loving and respectful young man who lost his way but is deeply committed to making amends for his actions. *Id.* The Court appreciates what Defendant's advocates have said on his behalf.

The Government recommends the Court impose a sentence within the effective Guidelines range of 210 to 240 months of imprisonment. Gov't Mem. at 6-7. The Government argues such a sentence is warranted because Defendant "appears to have been unusually violent even among members of NLC," emphasizing his "prolific" use of firearms and the "number of shootings he is tied to." Gov't Mem. at 6. Additionally, the Government contends that sentencing him within the effective Guidelines range would serve to dissuade him and other

13

individuals from engaging in similar acts and would combat the "glorification of violence" which has been a "detriment [to] the broader community." *Id.*

This Court appreciates the sentencing arguments raised by all parties and has considered each of these arguments in turn.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

The parties have not drawn the Court's attention to any applicable policy statements. Finding none on its own, the Court proceeds to the next § 3553(a) factor.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). As explained previously, restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A. However, the amount of restitution is not determinable yet as the Court is still awaiting responses from Defendant's victims and his victims' families. PSR ¶ 130. The Court reserves its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within 90 days after this sentencing to determine the specific amounts owed to Defendant's victims.

## IV. CONCLUSION

For the reasons set forth above, the Court determines a sentence of 210 months of imprisonment to be followed by three years of supervised release with special conditions, forfeiture in accordance with the Preliminary Order of Forfeiture, which the Court makes final today and by its terms becomes final as of this sentencing, and a $100.00 mandatory special assessment is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2). The Court does not impose a fine because Defendant appears unable to pay a fine.

The Court expressly adopts the factual findings of the Presentence Investigation Report, ECF No. 576, to the extent those findings are not inconsistent with this opinion and imposes the special conditions of release proposed by the Probation Department.

SO ORDERED.

s/ WFK
_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: February 28, 2024
       Brooklyn, New York

Case 1:20-cr-00293-WFK    Document 697    Filed 02/28/24    Page 16 of 16 PageID #: 9068